IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 19 2011

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

J & R FARMS,                                                                PLAINTIFF

VS.                      CASE NO.: 4 - 11 - CV - 0427 BSM

HK RED CATTLE, INC.; HK CATTLE CO., INC.;
DINAH E. WEIL; and LARRY JANSEN                              DEFENDANTS

This case assigned to District Judge Miller
and to Magistrate Judge Ray

## COMPLAINT

J & R Farms, by and through its attorneys, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., for its Complaint against HK Red Cattle, Inc., HK Cattle Co., Inc., Dinah E. Weil, and Larry Jansen alleges and complains as follows:

1.  Plaintiff J & R Farms is an Arkansas business with its primary place of business in Cabot, Arkansas located in Lonoke County. J & R Farms operates ranches in Floyd, Arkansas in White County and Center Ridge, Arkansas in Conway County.

2.  Defendant HK Red Cattle, Inc., is a for profit corporation organized under the laws of the State of Texas. Its primary place of business is located in Rosharon, Texas. Its registered agent for service of process is Dinah E. Weil, 3312 West FM 1462, Rosharon, Texas 77583.

3.  Defendant HK Cattle Co., Inc., is a for profit corporation organized under the laws of the State of Texas. Its primary place of business is located in Irving, Texas. Its registered agent for service of process is William R. Kruse, 1211 Peach, Dalhart, Texas 79022.

4.  According to www.hkcattle.com (the website for HK Red Cattle, Inc. and/or HK Cattle Co., Inc.), either one or both corporate Defendants are simply identified as "HK Cattle." At this time, the relationship between HK Red Cattle, Inc. and HK Cattle Co., Inc. has not been

1

disclosed to the Plaintiff, therefore, for purposes of this Complaint the Defendants will be jointly identified as "HK Cattle."

5. Defendant Dinah E. Weil is the President and Director of HK Red Cattle, Inc. and is an owner of HK Cattle. Ms. Weil is a resident of Texas and may be served at 3312 West FM 1462, Rosharon, Texas 77583.

6. Defendant Larry Jansen is a fifty-percent owner of HK Cattle. Mr. Jansen is a resident of Texas and may be served at 3312 West FM 1462, Rosharon, Texas 77583.

7. The nature of this suit is a breach of implied and express warrantees and negligence action brought against Defendants due to their sale of diseased cattle to Plaintiff.

8. Pursuant to 28 U.S.C. 1332, this Court has jurisdiction over this matter and the parties hereto. Venue is proper in this Court.

9. Since May 2005, J & R Farms has bred and raised Red and Grey Registered American Brahman Cattle. The American Brahman is the first beef breed developed in the United States. The breed excels in adding hybrid vigor especially when bred with British or Continental breeds, producing calves that display highly desired characteristics of the Brahman parent, such as drought resistance, heat tolerance, disease and parasite resistance, and increased longevity. For these reasons, the breed's genetics are in high demand by cattlemen worldwide.

10. J & R Farms breeds and raises Red and Grey Registered American Brahman Cattle for seedstock production. Seedstock production costs more time and money than producing commercial cattle, because there are countless hours spent maintaining, enhancing, and marketing the integrity of the genetic breed.

11. In March 2009, J & R Farms sought to increase the size and quality of its herd of American Brahman Cattle. After observing Defendants' cattle at a show in Houston, J & R

Farms purchased thirteen (13) cows and five (5) calves from Defendants for seventy thousand dollars ($70,000.00).

12. At the time, Defendants were considered to be a leader in the breeding and sale of Red Brahman cattle, and the cows in the Houston show were characterized as representative of the Defendants' herd. Defendants' herd was represented to be part of a 130 year old "Brahman Dynasty" and of the highest quality genetic material.

13. During the purchase of the first thirteen (13) head of cattle, Defendants represented that they intended to move their business to the Central American country of Panama. Defendants intended to sell all of the cattle in their Texas herd, and negotiations began for J & R Farms to purchase the herd.

14. J & R Farms agreed to pay $4,000.00 for each Red Brahman cow received from Defendants, with no limit on the number of cows to be purchased. Defendants represented that each cow sold would be a productive cow (defined as a cow able to produce milk and calves), that each cow would be free from defect, and that each cow's registration papers would be provided.

15. Up to February 17, 2010, J & R Farms received an additional ninety-six (96) cows from Defendants, some of which had calves at their side.

16. In return, J & R Farms made the following payments to Defendants:
   a. $50,000.00 on 4/2/2009
   b. $100,000.00 on 4/23/2009
   c. $100,000.00 on 5/6/2009
   d. $100,000.00 on 5/27/2009
   e. $100,000.00 on 7/20/2009

3

In total, J & R Farms paid $450,000.00 for ninety-six (96) cows, an overpayment of $66,000.00.

17.   On February 17, 2010, J & R Farms sent a letter to Defendants notifying them of the overpayment and requesting reimbursement.  At the same time, J & R Farms requested a refund for one cow with mastitis and two cows that could not produce milk.  In addition, J & R Farms requested the necessary registration paperwork on seven cows that had not been provided upon delivery of the cows.  A copy of the February 17, 2010 correspondence is attached as Exhibit 1.

18.   Defendants did not return the $66,000.00 overpayment, did not reimburse Plaintiff for the three defective cows, and did not provide the registration paperwork for the seven undocumented cows delivered.

19.   In addition, on November 24, 2009, one of the cows sold to J & R Farms became seriously ill.  Despite the efforts of the experienced ranchers at the farm, the cow died.

20.   Soon thereafter, another cow became sick.  Again, despite highly trained and experienced ranchers tending to the cow, it deteriorated and died.

21.   Both cows died a horrible and painful death.  The ranchers tending to the cows spent every waking hour in futile attempts to nurse the cows back to health.

22.   A veterinarian consulted on the illness and death of the two cows determined that the cows suffered and died from Johne's Disease.

23.   Johne's Disease is a contagious, progressive, chronic, and fatal infection that primarily affects the small intestines of mammals with four compartments to their stomachs.  Cattle afflicted with Johne's Disease die a painful and miserable death from severe diarrhea and weight loss.  There is no treatment or cure for Johne's Disease.

24.   Upon determining that Plaintiff had purchased cows with Johne's Disease from

Defendants, Plaintiff had all of its cattle over the age of two tested for the disease. In all, sixteen (16) cows tested positive or suspect for Johne's Disease. The cows and their progeny (as the disease can be spread in utero and in cow's milk) have been quarantined by Plaintiff. A total of thirty-three (33) were quarantined from April 13, 2009 to April 7, 2011.

25. Cattle are branded for identity based on the farm from which they are bred. The following cattle purchased from Defendants tested positive for Johne's Disease: HK 737, HK 661, HK 733, HK 612, HK 703, HK 444, HK 717, HK 726, HK 574, HK 629, HK 720, HK 754, HK 547, HK 721, HK 693, and HK 862.

26. The following cows died from Johne's Disease: HK 819, HK 853, HK 519, HK 645, HK 783, HK 867, and HK 669.

27. In addition, the following offspring of Defendants' cows tested positive for Johne's Disease: J&R 96, J&R 116, J&R 109, J&R 108, J&R 120, J&R 101, HK 863, HK 874, and 2 hefiers that were not branded.

28. Cattle testing positive or suspect for Johne's Disease cannot be sold or used for any purpose, including breeding, beef, or dairy. All the quarantined cattle must be destroyed.

## COUNT I:
## BREACH OF EXPRESS WARRANTY

29. J & R Farms re-alleges and incorporates herein by reference paragraphs 1 through 22 as though fully set forth herein.

30. Defendants expressly represented that their Red Brahman cattle were "quality" and "highest quality" cattle. In addition, Defendants provided an initial sample of eighteen (18) head of cattle that appeared to be in good health.

31. Cattle with Johne's Disease are not quality or highest quality animals, are not in good health, and are not worth $4,000.00 per cow.

32. The Defendants' actions in selling Plaintiff cows with Johne's Disease is the proximate and actual cause of Plaintiff's damages, including paying $4,000.00 per head for worthless and diseased cattle, feeding and maintaining the cattle, expenses related to nursing the cattle when they fell ill, veterinary expenses, and other costs and expenses born by Plaintiff related to the diseased cattle.

33. Plaintiff was the company whom Defendants would reasonably expect to be affected and sustain damages by the diseased cattle.

34. Plaintiff has been damaged by Defendants' breach of its express warranty in an amount to be determined at trial.

## COUNT II:
## BREACH OF IMPLIED WARRANTY

35. J & R Farms re-alleges and incorporates herein by reference paragraphs 1 through 28 as though fully set forth herein.

36. Defendants knew that J & R Farms intended to use the cattle purchased for seed stock production. Therefore, Defendants knew that J & R Farms cattle were expected to be free from disease and of high quality genetics with genetic background established by registration.

37. Defendants knew that J & R Farms was relying on Defendants' skill and judgment when furnishing suitable cattle. J & R Farms did, in fact, rely upon Defendants' skill and judgment regarding cattle and American Brahman cattle throughout the purchase.

38. The cattle sold to J & R Farms were not fit for seedstock or any other purpose. Defendants knew that the cattle were diseased and therefore not fit for any purpose.

39. Defendants' knowing and intentional sale of diseased, unfit cattle was the proximate and actual cause of Plaintiff's damages.

40. Plaintiff was the company whom Defendants would reasonably expect to be

affected and sustain damages by the receipt of diseased, unfit cattle.

41. Plaintiff has been damaged by Defendants' breach of their implied warranty in an amount to be determined at trial.

## COUNT III:
## STRICT LIABILITY

42. J & R Farms re-alleges and incorporates herein by reference paragraphs 1 through 35 as though fully set forth herein.

43. Defendants were engaged in the business of raising, breeding, and selling American Brahman cattle.

44. The cattle were supplied to J & R Farms by Defendants in a defective condition which rendered the cattle unreasonably dangerous.

45. The defective condition was the proximate and actual cause of J & R Farms' damages.

46. Defendants are strictly liable to Plaintiff for the sale of defective, unreasonably dangerous, and diseased cattle, in an amount to be determined at trial.

## COUNT IV:
## NEGLIGENCE & VIOLATION OF ARKANSAS LAW

47. J & R Farms re-alleges and incorporates herein by reference paragraphs 1 through 40 as though fully set forth herein.

48. Defendants knowingly and negligently sold cattle infected with Johne's Disease to J & R Farms.

49. Defendants knew or should have known that the cattle were infected with Johne's Disease.

50. Defendants had a duty to use ordinary care to ensure that cattle it represented to

be "quality" were not diseased prior to selling the cattle to J & R Farms.

51. In addition, Defendants violated Arkansas law by knowingly causing diseased cattle to be brought into Arkansas:

Arkansas Code Annotated §2-40-101(c)(1):

Any person who shall bring into or cause to be brought into the state any animal suffering from a contagious or infectious disease or any animal that has been exposed to the contagion or infection of any disease, knowing the animal to have been so diseased or to have been so exposed, shall be guilty of a violation.

Arkansas Code Annotated §2-40-101(c)(2)(B):

In addition [to a fine], he or she shall be liable to others for damages due to infection from the animal.

Arkansas Code Annotated §5-62-116: Diseased Animals – Sale

(a) Upon conviction, a person who knowingly sells or offers for sale, or uses, or exposes, or causes or procures to be sold or offered for sale, or used, or to be exposed, any horse or other animal having the disease known as "glanders" or "farcy" or any other contagious or infectious disease known to the person to be dangerous to human life, or that is diseased past recovery, is guilty of a Class A misdemeanor.

52. Defendants' failure to use ordinary care and to obey Arkansas law proximately and actually caused J & R Farms' damages.

53. Defendants are therefore liable for the damages sustained by J & R Farms for the knowing and negligent sale of diseased cattle, and J & R seeks all damages to which it is entitled for Defendants' actions.

## COUNT V:
## FRAUD & DECEIPT

54. J & R Farms re-alleges and incorporates herein by reference paragraphs 1 through 47 as though fully set forth herein.

55. Defendants knew that the cattle they sold to J & R Farms were diseased with

8

Johne's Disease. Defendants were under a duty to disclose this information to Plaintiff, but refused to do so.

56. The misrepresentations and omissions were made deliberately, willfully, and maliciously to mislead Plaintiff into reliance and action thereon.

57. Plaintiff had no opportunity to determine that Defendants' representations were false and misleading, and that the representations included material omissions. Plaintiff reasonable relied thereon to its substantial detriment and damages.

58. Due to its reliance on Defendants' representations, Plaintiff was and continues to be financially damaged as set forth further herein.

59. Defendants are liable for punitive damages for their reckless and wanton or willful disregard for public safety in their concealment and denial that the cattle sold to Plaintiff were contaminated with Johne's Disease. Defendants knew or should have known that their conduct would naturally and probably result in damage and injury to Plaintiff, yet they acted with malicious or reckless disregard of the damages that would likely result. Defendants are therefore liable for punitive and exemplary damages pursuant to Arkansas law.

## COUNT VI:
## UNJUST ENRICHMENT

60. J & R Farms re-alleges and incorporates herein by reference paragraphs 1 through 53 as though fully set forth herein.

61. Between April 2, 2009 and July 20, 2009, J & R Farms paid $450,000.00 to Defendants to purchase cattle at $4,000.00 per head.

62. Defendants delivered only ninety-six (96) cattle.

63. Defendants knowingly received the benefit of $66,000.00 for which no cattle were provided.

9

64. J & R Farms reasonably expected to receive approximately sixteen (16) additional cattle or a repayment of any remaining money paid for cattle not received.

65. In addition, Defendants failed to replace or reimburse for the cow with mastitis and the two cows that did not produce milk. . For these cows, Defendants were unjustly enriched an additional $12,000.00

66. Defendants were unjustly enriched in the amount of $78,000.00 when they failed to provide either additional suitable cows or a refund of the money.

67. In addition to the amount Defendants are liable for selling J & R Farms diseased cattle, J & R Farms is entitled to recover on a money had and received basis for the $78,000.00 overpayment, for which Defendants have been unjustly enriched.

## DAMAGES

68. The conduct of Defendants identified above is the proximate and actual cause of substantial damages to J & R Farms. As a result of Defendants' conduct, J & R Farms seeks all damages to which it is entitled, including but not limited compensatory damages, incidental damages, and consequential damages including $4,000.00 per head for worthless and diseased cattle, feeding and maintaining the cattle, expenses related to nursing the cattle when they fell ill, veterinary expenses, and other costs and expenses born by Plaintiff related to the diseased cattle. J & R Farms also seeks reimbursement of $78,000.00 for which Defendants were unjustly enriched. J & R Farms also seeks expenses and taxable court costs incurred in litigating this cause of action, as well as exemplary or punitive damages, and for all other relief to which it may be entitled.

69. Plaintiff demands a jury of twelve (12).

WHEREFORE, J & R Farms prays that it be granted judgment against Defendants in an amount to be determined at the trial of this matter, plus prejudgment interest, its attorneys' fees, expenses, and costs, post-judgment interest, punitive or exemplary damages, and for all other relief to which law, justice, or equity otherwise entitles or requires. The amount of damages at issue is greater than $75,000.

Respectfully submitted,

**MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201
Phone: 501-688-8887
Fax: 501-688-8807

*/s/ Catherine Corless*
Lyn P. Pruitt
Arkansas Bar No. 84121
Catherine Corless
Arkansas Bar No. 2009020

*Attorneys for J & R Farms*